IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERTA F. THORPE, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> MICHAEL J. ASTRUE, ) </br> Commissioner of Social Security, ) </br> ) </br> Defendant. ) | **MEMORANDUM OPINION </br> AND RECOMMENDATION** </br> </br> 1:08CV190 |

Plaintiff, Roberta F. Thorpe, brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on January 4, 2006, alleging a disability onset date of March 10, 2005. Tr. 69, 236. The applications were denied initially and upon

reconsideration. Tr. 24, 25; 234, 235. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). See Tr. 13. Present at the hearing, held on June 5, 2007, were Plaintiff and her attorney. Tr. 239.

By decision dated June 28, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 13. On February 15, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 4, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since March 10, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

Tr. 15. He continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work not requiring more than occasional stooping or crouching.

2

Tr. 16. The ALJ found that Plaintiff was able to perform her past relevant work as a payroll clerk as described in the Dictionary of Occupational Titles,[1] #215.382-014. Tr. 19. Accordingly, the ALJ decided that Plaintiff was not under a disability, as defined in the Act, from March 10, 2005, through the date of his decision.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to explain his consideration of the experts' opinions. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] The Dictionary of Occupational Titles, a Labor Department guide to job ability levels that has been approved for use in Social Security cases, is the Commissioner's primary source of reliable job information. See 20 C.F.R. § 404.1566(d)(1).

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

> result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported

---

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this opinion will be limited to those found in Part 404.

4

by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational.  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Issue**

Plaintiff complains that the ALJ committed reversible error in failing to properly assess the opinions proffered by experts engaged by the state Disability Determination Services ("DDS").  Plaintiff argues that these opinions establish that her mental impairment is "severe."

According to Administration practice, an impairment is "not severe" if it is only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities."  Social Security Ruling (SSR) 96-3p, 61 Fed. Reg. 34468, 34469.  See also section 404.1520(c).  The Regulations provide that "basic work

5

activities" affected by mental impairments would include (I) understanding, carrying out, and remembering simple instructions; (ii) use of judgment; (iii) responding appropriately to supervision, co-workers and usual work situations; and (iv) dealing with changes in a routine work setting. Section 404.1521(b)(3)-(6). During the severity assessment, the adjudicator is required to make "a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms)." SSR 96-3p, 61 Fed. Reg. at 34469.

Plaintiff's records generally fail to establish that, as a result of her mental impairments, she experienced more than a minimal effect on her ability to perform basic work activities. Throughout the relevant period, Plaintiff's medical records contain neither complaints nor observations of psychiatric symptoms. Orthopedist Michael Hilts, the only caregiver who treated Plaintiff during the relevant period, saw her several times, yet never commented on her psychological state. See Tr. 149-65. Although Plaintiff alleged, just prior to her hearing, that Dr. Hilts prescribed amitriptyline as a "sedative for nerves," Tr. 115; see also Tr. 125 ("Nervous Condition"), her medical records indicate that it was prescribed to help Plaintiff with sleep, see Tr. 142; see also Tr. 139, and pain, see Tr. 163, 169, 232.

The other submissions to Plaintiff's record also do not support a finding that her mental impairment is severe. A report from her daughter states that Plaintiff experiences "periods of depression," but also that Plaintiff has no problems getting along with authority figures or others. Tr. 77, 78. Further, her daughter observed

6

that Plaintiff has no problems with concentration, paying attention, or following instructions. Tr. 77. Importantly, there is no indication that Plaintiff's persistence or pace are affected by a mental impairment. See id.

Plaintiff's two Function Reports echo these statements. See Tr. 85-86; 93-94. In the second, Plaintiff said that she had "become very depressed," yet still had no problems with "changes in routine." Tr. 86. Moreover, Plaintiff alleged no mental health issue in her Disability Report, and answered that she had never seen anyone "for emotional or mental problems that limit[ed her] ability to work." Tr. 98, 99. Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding it "significant" to the severity analysis that plaintiff failed to allege depression in her benefits application); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek treatment constitutes a reason for discounting subjective claims). Consequently, the first DDS expert to review Plaintiff's case found that, mentally, she had "No Medically Determinable Impairment." Tr. 216.

Plaintiff's psychological well-being did not become an active issue until she saw Dr. Mark Fields, a DDS consultant, for a physical examination the year following her alleged disability onset. He listed among her "chief complaints" both anxiety and depression. Tr. 169. According to Dr. Fields,

> [Plaintiff] began feeling depressed and anxious last year, and states it is likely secondary to her medical problems. She describes feeling mentally and physically bad all of the time. . . . Her memory and concentration are felt to be okay. . . . She has not undergone

7

mental health counseling recently but feels her prescribed medications
are helpful in alleviating depressive symptoms.

Tr. 170.

Dr. Fields observed that Plaintiff was "sad-appearing," and responded slowly to questions. Id. He included depression among his diagnoses, Tr. 171, and suggested that DDS have Plaintiff undergo psychiatric evaluation "for her depression and her claims of recent anxiety," Tr. 172.

DDS sent Plaintiff to Dr. Thomas Wilson for a psychiatric consultative examination. Plaintiff told Dr. Wilson that she took amitriptyline "at night to help her rest because if she does not get her rest it makes it more likely she is going to develop some [cluster] headaches." Tr. 176. Plaintiff affirmed to Dr. Wilson that she had never received mental health treatment. She added,

> [H]er medical doctor offered to prescribe some medication for her for depression but she refused because she feels like she is taking too much medication already. At this time she said that she does feel depressed because her back pain makes it impossible for her to work and get around. She also complains of poor appetite. She had no complaints about energy or concentration and denied crying spells. She denied memory problems. She denies symptoms consistent with anxiety disorder.

Id.

Dr. Wilson described Plaintiff as polite and friendly, yet she appeared depressed. Tr. 177. Plaintiff said that, at times, she avoided being around people, but also that she could shop alone. The doctor diagnosed Plaintiff with adjustment disorder with mixed features, and commented:

8

> This claimant today was able to comprehend and to follow instructions and her attention span appeared to be good. She appears to have the mental ability to perform routine repetitive tasks without undue supervision and she appears to be capable of exercising appropriate judgment concerning work function.
>
> She does have some symptoms of depression which had been caused and aggravated by her back pain and loss of her job and retirement. Because of this, at times she might have some trouble in tolerating work pressures and in relating satisfactorily with coworkers. She clearly has the ability to handle benefits alone and in her own best interests. I suggested should her depressive symptoms worsen, she might wish to consider mental health treatment.[4]

Tr. 178 (footnote added).

Thereafter, Dr. Mitchell Rapp, a DDS expert, reviewed Plaintiff's medical records, together with Dr. Wilson's report. Dr. Rapp completed a Psychiatric Review Technique, where he assessed Plaintiff's mental impairment under Listing[5] 12.04, Affective Disorders. Tr. 183. Under that Listing's "B" criteria, he determined that Plaintiff was moderately limited in maintaining concentration, persistence, or pace. Tr. 190. Dr. Rapp noted that Dr. Wilson found that Plaintiff was able to comprehend and follow instructions and her attention span appeared to be good. Tr. 192. Dr.

---

[4] Cf. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) ("The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment."); section 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

[5] The "Listings," found at 20 C.F.R. part 404, subpart P, Appendix 1 (part A), "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). When a claimant satisfies a Listing by meeting all its specified medical criteria, he presumably qualifies for benefits. See id.

Wilson had concluded, however, that Plaintiff might have problems tolerating work pressures and with co-workers.

Dr. Rapp also opined in a Mental Residual Functional Capacity Assessment that Plaintiff was moderately limited in her abilities to:

- carry out detailed instructions;

- maintain attention and concentration for extended periods;

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and

- respond appropriately to changes in the work setting.

Tr. 194-95. Although Dr. Rapp believed that the record, overall, suggested a non-severe impairment, he referred again to Dr. Wilson's belief that Plaintiff would have problems with work pressures. Tr. 196. Dr. Rapp found that Plaintiff would be able to maintain concentration and persistence sufficient to perform simple, routine, repetitive tasks, but that her "[a]bility to adapt in the workplace may have some limitations." Id. He added that Plaintiff could handle "some details and a non rapid pace." Id.

The assessments by Dr. Wilson and Dr. Rapp clearly establish their opinion that Plaintiff's mental impairment imposes "more than a minimal effect" on her ability to perform basic work activities. Neither opined that Plaintiff would have difficulty with simple instructions, use of judgment, or supervision, although Dr. Rapp believed

10

that Plaintiff might have problems with detailed instructions. But both doctors suggested that Plaintiff might have some difficulty with co-workers and with changes in work setting.

Thus, in finding Plaintiff's mental impairment non-severe, the ALJ declined to adopt these opinions. As explained by Plaintiff, this decision has possible ramifications at step four of the sequential evaluation process, where the ALJ decided that Plaintiff could perform her past, semi-skilled work.[6] Of course, if the ALJ erred in finding that Plaintiff could perform her past work, he would have to proceed to step five. See section 404.1520(a)(4)(iv),(v).

The Administration adopted Social Security Ruling 96-6p, 61 Fed. Reg. 34466, expressly to direct fact finders' consideration of findings by "State agency medical and psychological consultants and other program physicians and psychologists." Id. at 34467. Citing Section 404.1527(f), the Ruling provides that such findings of fact become opinions at the ALJ and Appeals Council levels, and these opinions must be evaluated. Although the fact finders are not thereby bound, "they may not ignore

---

[6] Semiskilled occupations are more complex than unskilled work and distinctly simpler than the more highly skilled types of jobs. They contain more variables and require more judgment than do unskilled occupations. Even though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled. Therefore, close attention must be paid to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work.

SSR 82-41, 1975-1982 Soc. Sec. Rep. Serv. 847, 849-50 (West 1983).

Case 1:08-cv-00190-JAB-WWD   Document 14   Filed 03/31/09   Page 11 of 14

these opinions and *must explain the weight given to the opinions in their decisions.*"
Id. (emphasis added). This, as conceded by Defendant, is where the ALJ failed.[7]

The ALJ made no mention of Dr. Rapp's assessment. He discussed Dr. Wilson's exam twice, see Tr. 18, 19, and noted the doctor's statement that Plaintiff might have trouble in relating to co-workers, Tr. 19. With respect to this opinion, the ALJ determined that Plaintiff's "depressive symptoms are precipitated by pain. She should be able to relate satisfactorily to others in work environments that involved work that does not exceed her residual physical functioning capacity." Id.

Further, the ALJ found Plaintiff's statements about her symptoms to be "not entirely credible." Id. Hence, perhaps he concluded that Plaintiff would not experience pain while performing the job of payroll clerk which, as described by the Dictionary of Occupational Titles, would require no more than sedentary exertion. See id. Because she would not experience pain, Plaintiff would not be depressed. This conclusion can logically be extended to Plaintiff's other mental limitations, as both she and Dr. Wilson believed that her mental impairment stemmed from her physical ailments. See Tr. 170, 176, 178. Plaintiff has challenged neither the ALJ's physical residual functional capacity nor his credibility finding.

Nevertheless, this line of reasoning is the court's, not the ALJ's, and the court can provide post hoc reasoning no more than can the Commissioner. See

---

[7] Contrary to Defendant's extended arguments, this is Plaintiff's complaint, *not* that there is insubstantial support for the ALJ's decision.

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action[.]"); Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). "[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Consequently, this case should be remanded for the ALJ to properly address the experts' opinions and to "build an 'accurate and logical bridge from the evidence to [his] conclusion' so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (citing Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)). See also Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000) (an ALJ's independent review of the medical evidence must bridge the evidence he is reviewing to his conclusions).

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence, and the correct legal principles were not applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner

13

under sentence four of 42 U.S.C. § 405(g).  The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this recommendation.  To this extent, Plaintiff's motion for summary judgment (pleading no. 9) seeking a reversal of the Commissioner's decision should be **GRANTED**.  To the extent that Plaintiff's motion seeks an immediate award of benefits, it should be **DENIED**.  Defendant's motion for judgment on the pleadings (pleading no. 12) should be **DENIED**.

					_____
					WALLACE W. DIXON
					United States Magistrate Judge

March 31, 2009